IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DR. KAREN LOPEZ AUSTEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| WEATHERFORD COLLEGE OF THE | § | CIVIL ACTION NO. _____ |
| PARKER COUNTY JUNIOR COLLEGE | § | |
| DISTRICT, | § | |
| | § | |
| *Defendants.* | | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Dr. Karen Lopez Austen ("Austen" or "Plaintiff") complains of Defendant Weatherford College of the Parker County Junior College District (referred to as "Defendant" or "Weatherford College") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, the Texas Commission on Human Rights Act ("'TCHRA'"), TEX. LABOR CODE §21.001 *et seq* and Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 (2002). Plaintiff also brings claims for constitutional violations, breach of contract, and defamation. For these causes of action, Plaintiff would show the Court the following:

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff is an Hispanic female and a resident of Weatherford, Texas.

2.    Defendant Weatherford College is a public community college district organized under the laws of the State of Texas, with its principal office and place of business in Parker County,

Texas, and may be served with citation on its President Kevin Eaton, Ed.D. at Weatherford College, Office of the President, 225 College Park Drive, Weatherford, Texas 76086.

3.      At all times material hereto, Weatherford College conducted business in Texas and was doing business in the State of Texas by employing Plaintiff in Weatherford, Texas.  The causes of action asserted herein arose from and are connected to purposeful acts committed by Defendant during Plaintiff's employment in Weatherford, Texas.

4.      This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1981, and 42 U.S.C. § 2000e-5(f)(3).  The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

5.      A substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in Parker County, Texas.  Venue is proper in this district and division under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## II.      **FACTUAL BACKGROUND**

6.      Defendant Weatherford College claims to be the oldest continuing community college in the State of Texas.  Defendant also claims that approximately 10,000 students enroll at Weatherford College each year in credit and non-credit courses.

7.      Plaintiff was employed by Weatherford College from August 2007 until July 2010.

8.      As such, Defendant is an "employer" as that term is defined in 42 U.S.C. § 2000e(b) and TEX. LABOR CODE § 21.002(8).

9.      Defendant hired Plaintiff in August 2007 as the Department Chair of Kinesiology.

10.      A few months after Dr. Austen's hire, she was asked to oversee the Betty Jo Graber Center which housed both the Athletics Department and the Kinesiology Department.  This was also the site for intramural sports operations.  Dr. Austen was also asked to help organize this

area.  Plaintiff became a valued employee and was asked to serve on two search committees. She was also given funds by the college president to expand the weight room in a time when funding was difficult to receive.

11.     Plaintiff was one of the few female employees at Weatherford College who held a doctorate and served higher education for more than 15 years.  With the exception of a female assistant coach, she was the only full-time professional female in the Betty Jo Graber Center. Dr. Austen was praised for her work and began to establish working relationships around campus.

12.     During her employment, Dr. Austen was consistently a very high performer, elected to the faculty senate, and recognized as a well respected member of the College community.

13.     Plaintiff received rave formal reviews from her students and peers, and regularly received positive comments from the administration including, but not limited to, the Chair of the Board of Trustees Mr. Frank Martin and the College President Dr. Kevin Eaton.

14.     During her employment with Defendant, Plaintiff received regular evaluations.  Based on these performance evaluations, Plaintiff consistently met and often exceeded expectations.

15.     Despite her superior performance, Dr. Austen was unlawfully demoted and then later terminated because of discriminatory and retaliatory animus.

16.     She was treated differently than her male and non-Hispanic colleagues in the terms and conditions of her employment.

17.     She was replaced as the Kinesiology Chair by Thomas Robert McKinley III, despite having better credentials and greater experience than he.

18.     She was harassed by Steven Garippa and others based on her gender and because she had asserted previous claims of discrimination.

19.     Dr. Austen was also subjected to offensive comments about women such as, "she was rode hard and hung up wet."  One former supervisor repeatedly stated, "I don't trust her as far as I could throw her-and that isn't far."  This comment regarding trust and body weight was made about Vice President Andra Cantrell and also about Education Dean Rhonda Torres.  This same Dean also made similar remarks such as "I will rip her a new one" which referred to creating a new anus.  This Dean did not make the same or similar comments about men.

20.     Prior to the non-renewal of her contract and termination, Dr. Austen complained about the College's discriminatory practices related to the treatment of its women within the Athletic and Kinesiology Departments and the College's hostile work environment.

21.     Plaintiff initially filed a charge of discrimination in December 2008 complaining of sex discrimination and retaliation related to the hostile work environment, claims of discrimination and her demotion.

22.     Dr. Austen's charge of discrimination was eventually resolved and culminated with a Settlement Agreement and General Release signed October 26, 2009.

23.     Initially, it appeared that Weatherford College would abide by its agreement and would not retaliate or discriminate against Dr. Austen as it had done before.  However, soon after the agreement was entered into, the retaliatory and discriminatory conduct of Steven Garippa and others began again.

24.     For instance, in January 2010, Steven Garippa failed to properly comply with Title IX by ignoring the "interest and ability" of Weatherford College female students, and by marginalizing Dr. Austen.  Because the College had not been in compliance with Title IX for several years, the Office of Civil Rights required the college to survey female students to determine their interest in and ability to play a new sport.  The sport with the most votes was to be adopted.  Instead,

Steven Garippa chose the sport, claiming that he was unable to get enough student votes.  Steven Garippa, however, walked away from the voting table when Dr. Austen's class was on its way to vote.  Mr. Garippa blatantly disregarded the interest and ability of female students as required by Title IX and marginalized Dr. Austen from participating in the procedure for selecting the new sport, despite the fact that she taught the largest number of female students enrolled in kinesiology.

25.     In January 2010 through June 2010, Steven Garippa used subordinates and anyone he could intimidate or manipulate including secretaries, coaches, and students to make false statements and complaints against Dr. Austen.

26.     Around mid-March 2010, the former athletic director Thomas Robert McKinley II told Dr. Austen that Steven Garippa was setting her up and that Mr. Garippa said to him, "They don't have enough on her."  A former board member also told Dr. Austen to watch her back and stopped explaining just when Chair of the Board of Trustees Frank Martin walked up.

27.     Steven Garippa also began a campaign to manufacture reasons to discipline and ultimately terminate Dr. Austen.

28.     On or about March 29, 2010, Plaintiff was told by her supervisor Kinesiology Chair Mr. Trey McKinley to go immediately to Human Resources due to a complaint against her about a remark that she allegedly made over the telephone.  She complied and then Plaintiff immediately sought out Dean Richard Bowers.  She explained Garippa's involvement to Dean Richard Bowers and asked him to notify President Eaton that this was further retaliation.  President Eaton and Dean Richard Bowers notified Human Resources that the situation was "resolved."

29.     On or about the third week of April 2010, Plaintiff was subjected to verbal yelling by Steven Garippa in front of several students.  Two female students and Dr. Austen reported this

incident quickly and directly to Dean Richard Bowers since supervisor Trey McKinley was off campus. Athletic Director Steven Garippa had also been coaching two male students to write a complaint against Plaintiff, who was their professor.

30. On several occasions during the Spring of 2010, Steven Garippa stood directly next to the glass and stared through the blinds into the weight room while Dr. Austen taught bench pressing to her wellness class. Early on, Dr. Austen dismissed this peculiar and unprofessional behavior. As the semester progressed, this behavior continued to be distracting and made Dr. Austen feel uncomfortable.

31. Despite the intimidation and discriminatory/ retaliatory conduct of Steven Garippa, Dr. Austen continued to receive praise for her teaching and class work. Throughout the spring semester of 2010, Dr. Austen received "kudos" from the college administration, was elected to the faculty senate, was recognized during a board meeting for her student's service-learning project in the community, and was sent e-mails by the administration that she was doing a great job.

32. On or about April 26, 2010, Dr. Austen received a near-perfect annual evaluation from her Kinesiology Chair, Trey McKinley. The annual evaluation included a summary of his evaluation of Dr. Austen, a peer instructor's evaluation, and her student evaluations.

33. On April 26, 2010, Dr. Austen finally reduced to writing to her Chair Trey McKinley that Steven Garippa had created further issues and that she would follow with a complaint of discrimination and retaliation.

34. Dr. Austen eventually voiced her concerns to Trey McKinley, President Kevin Eaton, Richard Bowers, and Frank Martin. Dr. Austen's complaints were never appropriately addressed

by the College, and subsequently, the College retaliated against Dr. Austen because she raised these concerns.

35.     Despite receiving a stellar evaluation one month earlier, Dr. Austen was notified in May 2010 that her employment agreement with Weatherford College would not be renewed.

36.     On May 17, 2010, without notice, Dr. Austen was called to President Kevin Eaton's office and told that he was recommending that her employment not be renewed.   Dr. Austen asked President Eaton to look into the matter.   President Eaton refused.   In an attempt to intimidate Dr. Austen, President Eaton told Dr. Austen that the College sent a campus police vehicle which had been parked outside her house.

37.     Later, Dr. Austen called Chair of the Board of Trustees, Mr. Frank Martin and stated that the President had refused to review matters related to her employment and her claims of discrimination and retaliation.   She also asked Mr. Martin if he told the college where she lived. Mr. Martin confirmed that a car was sent to sit outside her home.   Mr. Martin said he would call President Eaton about looking into the matter further.

38.     In further retaliation, Defendant and President Dr. Kevin Eaton visited many departments around campus and invited individuals to his office to circulate false and stigmatizing reports related to Dr. Austen and her position as a faculty member.

39.     On June 10, 2010, Mr. Frank Martin of the Board of Trustees verbally announced in an open public forum with many people present who had worked with and for Dr. Austen that Dr. Austen's contract was non-renewed.

40.     Weatherford College's actions to not renew Dr. Austen's contract despite her stellar evaluation was retaliatory for her prior complaints of discrimination and retaliation.

41.     Steven Garippa's verbal and physical behavior towards Dr. Austen and other female employees created a hostile work environment.

42.     Steven Garippa's actions to formulate false reasons for Dr. Austen's termination also demonstrate a pretext for his discriminatory and retaliatory intent to unlawfully terminate her employment.  Weatherford College's actions to endorse this behavior and to rely on the false reports of Steven Garippa make Weatherford College vicariously liable for the discriminatory and retaliatory actions of Mr. Garippa.

43.     Mr. Garippa consistently exhibited, through his actions and statements, his hostility and bias against women.

44.     Also, based on the actions of management and the language used on campus, there continues to be a hostile work environment for women.  Weatherford College has endorsed this discrimination and retaliation by failing to respond in an appropriate manner to the complaints of discrimination and by tolerating and encouraging such a hostile environment and retaliation.

45.     Weatherford College has permitted a campaign that is obviously aimed at decimating the ranks of women and minority professors, as well as people who assert complaints of discrimination and retaliation.

46.     Dr. Austen made complaints to members of management of Weatherford College regarding this unlawful treatment, but the harassment, discrimination, and retaliation continued through the non-renewal of her contract in June 2010 and her summer teaching.

47.     Notably, Dr. Austen was contracted to teach the Summer Semester after being notified of the non-renewal of her regular contract, despite the fact that her contract was allegedly non-renewed as a result of misconduct and poor performance.

48.    Upon information and belief, Defendants discriminated against Plaintiff because of her sex, her race (Hispanic), and because she filed complaints of discrimination and retaliation.

49.    Defendant's non-renewal of Dr. Austen's employment agreement and the summary handling of the investigation of alleged wrongful conduct on her part shocked and overwhelmed Plaintiff.  The manner in which Defendant handled the investigation and exclusion of Plaintiff's superiors from the process gave the appearance that Dr. Austen had committed a serious infraction and that she had flagrantly breached the college's policy.  Such treatment caused Plaintiff extreme humiliation and emotional distress, and was a severe blow to both her personal and professional reputations.

50.    The damage to her professional reputation inflicted by Defendant has greatly harmed Plaintiff's ability to pursue a career in higher education, particularly within this geographic area. Dr. Austen has diligently searched for work in her field since the non-renewal of her employment contract and termination, but has been unable to obtain comparable employment.

51.    Dr. Austen jointly filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission-Civil Rights Division ("TWC") within 180 days of the non-renewal of her employment agreement.  Dr. Austen received a notice of right to sue from the EEOC on or about June 1, 2011.  This lawsuit is being filed within 90 days of receipt of Dr. Austen's Notice of Right to Sue from the EEOC.

52.    Plaintiff sought relief through all levels of the employee grievance process at Weatherford College, including but not limited to conferences before President Eaton, Frank Martin, Trey McKinley and Richard Bowers.  Plaintiff's grievance was denied at all levels. Plaintiff respectfully made a demand for a full due process or name-clearing hearing, including

any and all hearing and procedural rights which she might have by virtue of the college's policies, her contract, and state or federal law.

53.    Plaintiff set out her contention that she had (and has) both property and liberty interests at stake, including her objective expectancy of renewed employment as Department Chair of Kinesiology and/or Professor of Kinesiology, a liberty interest in her personal and professional reputation and good name, and substantive rights guaranteed by the state and federal constitutions such as free speech and protection from discrimination and retaliation.  Defendant denied Plaintiff's request for a full due process hearing or name-clearing hearing, provided vague and false statements to support her demotion, non-renewal, and termination, and failed to give Plaintiff a full evidentiary hearing.  Instead, Plaintiff's final grievance hearing before the Board of Trustees did not comply with procedural due process, as Plaintiff was not permitted to cross examine witnesses or call key witnesses, Defendant used documents it was not permitted to use, and Defendant failed to make an adequate statement of the cause or causes for Plaintiff's demotion, non-renewal, and termination in sufficient detail to fairly enable her to show error existed.  Defendant also summarily ignored other plausible explanations provided.  Finally, on or about June 10, 2010, the Board of Trustees upheld the decision of President Eaton and Frank Martin to not renew Plaintiff's contract and terminate her employment.

54.    All conditions precedent to the filing of this lawsuit have been met.

### III.    CAUSES OF ACTION

#### A.    Count One: Race Discrimination Under Section 1981

55.    Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 54 as if fully stated herein.

56.     Defendant's actions as described above constitute unlawful discrimination on the basis of race in violation of 42 U.S.C. § 1981. Specifically, Defendants terminated Plaintiff because of her race (Hispanic).  Defendant also disparately treated Plaintiff based on her race in the terms and conditions of her employment while she was employed by Weatherford College.  Other non-Hispanic employees received greater pay and benefits before, during and after her employment. Also, based on information and belief, Plaintiff was replaced by a non-Hispanic employee.

57.     The employment practices complained of above were intentional.

58.     As a result of Defendant's unlawful discriminatory actions, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

59.     As a further result of Defendant's discriminatory actions, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Plaintiff is therefore entitled to compensatory damages.

60.     Defendant's actions were done with malice and/or reckless indifference to Plaintiff's federally protected rights.  She is therefore entitled to punitive damages, for which she hereby sues.

61.     Plaintiff seeks attorneys' fees and costs of suit under 42 U.S.C. § 1988.

### B.     Count Two: Sex Discrimination Under Title VII

62.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 61 as if fully stated herein.

63.     Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII.

64.     Defendant's actions as described above constitute unlawful discrimination on the basis of sex under 42 U.S.C. §2000e-2(a).  Specifically, Plaintiff's sex (female) was a motivating factor in Defendant's decision to terminate her and/or not renew her contract.   Defendant also disparately treated Plaintiff based on her gender in the terms and conditions of her employment while she was employed by Weatherford College.   Other male employees received greater pay and benefits before, during and after her employment.   Also, based on information and belief, Plaintiff was replaced by a male employee.

65.     Plaintiff alleges that there was a causal connection between the adverse employment actions taken against her and her gender.

66.     The employment practices complained of above were intentional.

67.     As a result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.  Plaintiff has also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant's actions.

68.     As a further result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff seeks compensatory damages under 42 U.S.C. § 1981a.

69.     Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a.

70.     Plaintiff also seeks reasonable attorneys' fees and court costs, including reasonable expert fees, under 42 U.S.C. § 2000e-5(k).

## C.    Count Three: Retaliation Under Title VII

71.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 70 as if fully stated herein.

72.     Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII.

73.     Defendant's actions as described above constitute unlawful retaliation under 42 U.S.C. §2000e-3(a).  Specifically, Plaintiff previously opposed an employment practice made unlawful by Title VII and/or made a charge, testified, assisted, or participated in an investigation, proceeding or hearing protected by Title VII.  Plaintiff's participation in these protected activities was a motivating factor in Defendant's decision to terminate her and/or not renew her contract. Defendant also disparately treated Plaintiff in the terms and conditions of her employment because she engaged in protected activity while she was employed by Weatherford College.

74.     Plaintiff alleges that there was a causal connection between her participation in the protected activities described above and the adverse employment decisions the College made against Plaintiff.  But for the fact that the Plaintiff engaged in these protected activities, Plaintiff would not have suffered the adverse employment actions.

75.     Plaintiff alleges that the Board of Trustees' decision to uphold the recommendation to not renew Plaintiff's employment contract was done in retaliation for Plaintiff's filing of complaints concerning the College's discrimination and Title IX violations.

76.     The employment practices complained of above were intentional.

77.     As a result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated

with her employment.  Plaintiff has also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant's actions.

78.     As a further result of Defendant's retaliatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff seeks compensatory damages under 42 U.S.C. § 1981a.

79.     Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a.

80.     Plaintiff also seeks reasonable attorneys' fees and court costs, including reasonable expert fees, under 42 U.S.C. § 2000e-5(k).

### D.     Count Four: Sex Discrimination Under the TCHRA

81.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 80 as if fully stated herein.

82.     Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the TCHRA.

83.     The employment practices complained of above were intentional.

84.     Defendant's actions constitute unlawful discrimination under TEX. LABOR CODE §21.051. Specifically, Plaintiff's sex (female) was a motivating factor in Defendant's decision to terminate her and/or not renew her contract.  Defendant also disparately treated Plaintiff based on her gender in the terms and conditions of her employment while she was employed by Weatherford College.  Other male employees received greater pay and benefits before, during and after her employment.  Also, based on information and belief, Plaintiff was replaced by a male employee.

Case 4:11-cv-00536-A   Document 1   Filed 08/03/11   Page 15 of 25   PageID 15

85.     Plaintiff alleges that there was a causal connection between the adverse employment actions taken against her and her gender.

86.     As a result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.  Plaintiff has also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant's actions.

87.     As a further result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Because of these losses, Plaintiff seeks compensatory damages under TEX. LABOR CODE §21.2585.

88.     Defendant's actions were done with malice and/or with reckless indifference to Plaintiff's state-protected rights.  Plaintiff is thereby entitled to punitive damages under TEX. LABOR CODE §21.2585.

89.     Plaintiff also seeks reasonable attorneys' fees and court costs, including reasonable expert fees, under TEX. LABOR CODE §21.259.

### E.      Count Five: Retaliation Under the TCHRA

90.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 89 as if fully stated herein.

91.     Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the TCHRA.

92.     The employment practices complained of above were intentional.

93.     Defendant's actions constitute unlawful retaliation under TEX. LABOR CODE §21.055. Specifically, Plaintiff previously opposed a discriminatory practice, made or filed a charge of

discrimination, filed a complaint and/or participated in an investigation, proceeding or hearing protected by Title VII.  Plaintiff's participation in these protected activities was a motivating factor in Defendant's decision to terminate her and/or not renew her contract.  Defendant also disparately treated Plaintiff in the terms and conditions of her employment based on the fact that she engaged in protected activity while she was employed by Weatherford College.

94.     Plaintiff alleges that there was a causal connection between the participation in the protected activities described above and the adverse employment decisions made against Plaintiff.  But for the fact that the Plaintiff engaged in these protected activities, Plaintiff would not have suffered the adverse employment actions.

95.     Plaintiff alleges that the Board of Trustees' decision to uphold the recommendation to not renew Plaintiff's employment contract was done in retaliation for Plaintiff's filing of complaints of discrimination and Title IX violations.

96.     As a result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.  Plaintiff has also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant's actions.

97.     As a further result of Defendant's retaliatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Because of these losses, Plaintiff seeks compensatory damages under TEX. LABOR CODE §21.2585.

98.     Defendant's actions were done with malice and/or with reckless indifference to Plaintiff's state-protected rights.  Plaintiff is thereby entitled to punitive damages under TEX. LABOR CODE §21.2585.

99.    Plaintiff also seeks reasonable attorneys' fees and court costs, including reasonable expert fees, under TEX. LABOR CODE §21.259.

**F.    Count Six: Violation of Title IX, 20 U.S.C. § 1681, et seq.**

100.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 99 as if fully stated herein.

101.    Plaintiff alleges that the Defendant Weatherford College, through its illegal actions, failed to renew her contract and terminated Plaintiff in retaliation for her actions in complaining about noncompliance by its agents with the substantive portions of Title IX and for her participation in a Title IX proceeding, in violation of 34 C.F.R. sec. 100.7(e) which authorizes a private cause of action for any individual who has made a complaint, testified, or participated in any manner in an investigation, proceeding or hearing into alleged noncompliance with Title IX.

102.    Plaintiff further alleges that she complained about the systemic misallocations of resources between female and male athletic students and thus, under the above cited federal laws and regulations, is a "complainant" as defined by the terms of the federal regulations.

103.    Plaintiff further alleges that she has been retaliated against by the Defendant and its agents personally by being demoted, denied salary increases, subjected to a daily hostile work environment up to and including the non-renewal of her contract and her termination and continuing beyond, and by being denied substantial benefits, lost wages, future wages, lost earning capacity, and lost benefits.

104.    Defendant's actions were done with malice and/or with reckless indifference to Plaintiff's federally-protected rights.  Plaintiff is thereby entitled to punitive damages.

105.    Plaintiff also seeks reasonable attorneys' fees and court costs, including reasonable expert fees, under Title IX.

### G.     Count Seven: Free Speech and Due Process Claims

106.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 105 as if fully stated herein.

107.    To the extent necessary, each of the claims set forth below is pleaded in the alternative.

108.    ***Free Speech***.   Plaintiff alleges that her demotion, non-renewal and termination are an infringement on the right to free speech guaranteed by the Texas Constitution and the United States Constitution.   Plaintiff spoke as a citizen on matters of public concern, and Defendant retaliated against her for such protected speech in violation of state and federal law, including Article I, Section 19 of the Texas Constitution, the First Amendment of the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.   Plaintiff's protected exercise of speech was a motivating factor for the adverse employment actions taken by Defendant.   Therefore, Plaintiff is entitled to all damages and equitable relief allowed under state and federal law, including but not limited to reinstatement to the position of Department Chair of Kinesiology and/or Professor of Kinesiology.

109.    ***Petition Clause***.     Plaintiff's complaints regarding Defendant's discriminatory and retaliatory conduct and Title IX violations was a petition protected by the Petition Clause of the First Amendment.   Plaintiff complained as a citizen on matters of public concern.   Plaintiff alleges that her demotion, non-renewal and termination were retaliation for her protected activity.   There is a causal connection between Plaintiff's exercise of her First Amendment right to petition and Defendant's adverse employment actions against her.   Plaintiff's petition was a motivating factor in Defendant's decision to terminate her and/or not renew her contract. Plaintiff has been injured as a result of Defendant's retaliation and interference with Plaintiff's First Amendment rights.   Therefore, Plaintiff is entitled to all damages and equitable relief

allowed under state and federal law, including but not limited to reinstatement to the position of Department Chair of Kinesiology and/or Professor of Kinesiology.

110.   ***Procedural Due Process.***   As described herein, Plaintiff has been denied liberty, property, and privileges without due process/course of the law in violation of state and federal law, including Article I, Section 19 of the Texas Constitution; the Fourteenth Amendment the United States Constitution; and 42 U.S.C. §§ 1983 and 1988.   Defendant's intentional acts deprived Plaintiff of liberty and property interests recognized by and/or created by state law, including her objective expectancy of renewed employment as Department Chair of Kinesiology and/or Professor of Kinesiology and property interests guaranteed by the college's policies and her employment contract, all without due course of the law.   Additionally and/or alternatively, Plaintiff was deprived of the basic requirement of procedural due process before a fair, unbiased tribunal and/or a name-clearing hearing.

111.   ***Substantive Due Process.***   Defendant has been deprived of substantive constitutional rights guaranteed by the Texas Constitution and the United States Constitution, such as free speech and protection from discrimination and retaliation, without due process or course of the law and in an arbitrary, capricious and/or irrational manner, in violation of state and federal law, including Article I, Section 19 of the Texas Constitution; the Fourteenth Amendment the United States Constitution; and 42 U.S.C. §§ 1983 and 1988.   Additionally, Defendant's false or stigmatizing allegations, which were made in the course of and leading up to an adverse employment decision, deprived Plaintiff of her liberty interest in her personal and professional good name, reputation, honor, and integrity, without due course of the law and in an arbitrary, capricious and/or irrational manner, in violation of state and federal law, including Article I, Section 19 of the Texas Constitution; the Fourteenth Amendment the United States Constitution;

and 42 U.S.C. §§ 1983 and 1988.  Therefore, Plaintiff is entitled to all damages and equitable relief allowed under state and federal law.

112.    ***Conditions Precedent.***  All conditions precedent to the relief being sought by Plaintiff in this petition have been performed, occurred or been waived.

113.    ***Punitive Damages.***  Based on Defendant's conduct described above, Plaintiff is entitled to exemplary and/or punitive damages.  Defendant's actions were reckless, callous and/or indifferent to Plaintiff's federally protected rights.

### H.    Count Eight: Breach of Employment Contract

114.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 113 as if fully stated herein.

115.    Plaintiff and Defendant entered into an employment contract.

116.    Defendant's failure to tender Plaintiff 90-days notice of the non-renewal of her contract constitutes a breach of Defendant's employment agreement with Plaintiff.

117.    Defendant cannot unilaterally change the material terms agreed upon by the Parties. Further, any ambiguity in the contract should be read against the Defendant as the drafter of the employment agreement.

118.    Plaintiff fully performed her contractual obligations, and all conditions precedent to Plaintiff's recovery on the contract have occurred.

119.    Plaintiff has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court, which were a natural, probable and foreseeable result of Defendant's breach of contract.

120.    As a result of Defendant's breach of the employment contract, Plaintiff has been required to retain counsel to bring this lawsuit, and has agreed to pay her attorneys a reasonable fee.  Plaintiff is

entitled to recovery of her reasonable attorneys' fees and costs incurred in this lawsuit, pursuant to Tex. Civ. Prac. & Rem. Code §38.001.

## I.   <u>Count Nine: Breach of Settlement Agreement</u>

121.   Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 120 as if fully stated herein.

122.   Plaintiff and Defendant entered into a Settlement Agreement and General Release signed October 26, 2009.

123.   Defendant expressly breached the terms and conditions of the Settlement Agreement.

124.   Defendant's use of certain complaints and disciplinary actions in a hearing against Plaintiff was an express violation and breach of the Settlement Agreement entered into between Dr. Austen and Weatherford College.

125.   It is also believed that Weatherford College has not followed an agreed procedure regarding references and inquiries regarding Plaintiff's employment at Weatherford College.

126.   Confidentiality provisions of the Settlement Agreement and General Release entered into prevent more specific allegations and pleadings.

127.   Plaintiff fully performed her contractual obligations, and all conditions precedent to Plaintiff's recovery on the settlement agreement have occurred.

128.   Plaintiff has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court, which were a natural, probable and foreseeable result of Defendant's breach of the Settlement Agreement.

129.   As a result of Defendant's breach of the Settlement Agreement, Plaintiff has been required to retain counsel to bring this lawsuit, and has agreed to pay her attorneys a reasonable fee.  Plaintiff

is entitled to recovery of her reasonable attorneys' fees and costs incurred in this lawsuit, pursuant to Tex. Civ. Prac. & Rem. Code §38.001.

### J.    Count Ten: Fraudulent Inducement

130.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 129 as if fully stated herein.

131.    To the extent necessary, each of the claims set forth below is pleaded in the alternative.

132.    Defendant made material oral and written representations regarding its intention to comply with the terms of Settlement Agreement and General Release signed October 26, 2009.

133.    Defendant made these oral and written representations so that Plaintiff might enter into the Settlement Agreement and General Release and so that Plaintiff might release her discrimination and retaliation claims that were the subject of her 2008 charge of discrimination. These oral and written representations were false when Defendant made them.

134.    Upon information and belief, when the aforementioned representations were made, Defendant knew that such representations were false or Defendant made such representations recklessly without knowledge as to their truth and as a positive assertion.

135.    Defendant made the aforementioned representations with the intention that they should be acted on by Plaintiff.  Defendant had the specific intent to cause substantial injury or harm to the Plaintiff when it made these representations.

136.    Plaintiff acted in reliance on the aforementioned representations of Defendant by entering into the Settlement Agreement and General Release signed October 26, 2009 and releasing her discrimination and retaliation claims that were the subject of her 2008 charge of discrimination.

137.    Defendant had no intention to comply with the terms of the Settlement Agreement and General Release and at all relevant times intended to terminate her as a result of her previous

charge of discrimination and retaliation.  Defendant never conveyed its intentions or plan to Plaintiff and as a result fraudulently induced her to enter into the Settlement Agreement and General Release.

138.    Plaintiff has suffered injury because of Plaintiff's reliance on Defendant's fraudulent representations.

139.    The wrongful conduct of Defendant described above is a proximate and producing cause of the damages for which Plaintiff seeks recovery herein, a natural, probable and foreseeable result of Defendant's fraudulent inducement.

140.    Plaintiff is entitled to compensatory damages and exemplary damages related to the fraudulent representations made by Defendant and its conduct to fraudulently induce her to enter into the Settlement Agreement and General Release.

### K.    Count Eleven: Defamation

141.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 140 as if fully stated herein.

142.    Since the time of the non-renewal of Plaintiff's employment agreement, representatives of Weatherford College, including but not limited to Keri Waller, have made false statements regarding Plaintiff, her employment, her performance, and her length of service that were false.

143.    With regard to the truth of the statements made, Defendant was acting with actual malice and/or was negligent in regard to the veracity of the statements made.

144.    As a result of the false statements made, Plaintiff has suffered pecuniary injury.  The statements made have injured or impeached her reputation and have prevented her from finding comparable employment.

145.    Plaintiff has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court.  Plaintiff seeks all actual, compensatory, equitable, punitive and special damages which were a natural, probable and foreseeable result of Defendant's defamatory statements.

146.    Among other damages, Plaintiff specifically seeks loss of past and future income and loss of earning capacity.

147.    Because the defamatory statements of Defendant were made with malice and/or actual malice, Plaintiff seeks exemplary damages.

148.    Plaintiff also seeks all available injunctive relief to prevent Defendant from continuing to disseminate false and defamatory statements regarding Plaintiff.

## IV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that Defendant be summoned to appear and answer, and that on final trial, judgment be granted against Defendant, awarding Plaintiff the following:

a.    Back pay, including but not limited to, lost wages and other employment benefits;

b.    Reinstatement to the position from which Defendant discharged her; and if such reinstatement is not feasible, front pay and benefits;

c.    Actual damages;

d.    Compensatory and/or punitive damages, in the maximum amount allowed by law;

e.    Prejudgment and post-judgment interest, in the maximum amount allowed by law;

f.    Attorneys' fees, expert fees, and costs of suit;

g.    An order enjoining the Defendant from continuing to defame the Plaintiff; and

h.    Such other and further legal and equitable relief to which Plaintiff may be justly entitled.

## V.    JURY DEMAND

Plaintiff hereby requests a jury trial on all issues, claims, actions, and defenses in this case.


Dated: 8/3/2011                                    Respectfully submitted,


 /s/ Gayla C. Crain
Gayla C. Crain
   Texas Bar No. 04991700
Fred Gaona III
   Texas Bar No. 24029562
SPENCER CRAIN CUBBAGE
   HEALY & McNAMARA, pllc
1201 Elm Street, Suite 4100
Dallas, Texas 75270
Telephone:  (214) 290-0000
Facsimile:  (214) 290-0099

**ATTORNEYS FOR PLAINTIFF
DR. KAREN LOPEZ AUSTEN**