

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG – 8 2012

CLERK, U.S. DISTRICT COURT
By_____
Deputy

DR. KAREN LOPEZ AUSTEN,       §
                              §
          Plaintiff,          §
                              §
VS.                           §   NO. 4:11-CV-536-A
                              §
WEATHERFORD COLLEGE OF THE    §
PARKER COUNTY JUNIOR COLLEGE  §
DISTRICT,                     §
                              §
          Defendant.          §

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion of defendant,

Weatherford College of Parker County Junior College District, for

summary judgment.  After having considered such motion, the

response thereto of plaintiff, Dr. Karen Lopez Austen,

defendant's reply, the summary judgment record, and pertinent

legal authorities, the court has concluded that such motion

should be granted.

I.

History and Nature of the Action

This action was initiated on August 3, 2011, by the filing

by plaintiff of her original complaint.  Plaintiff filed her

first amended complaint on June 14, 2012.  The following is an

abbreviated version of the allegations made and causes of action
asserted by plaintiff in her amended complaint:

Plaintiff, who says she is an Hispanic female, was hired in
August 2007 by defendant, a public community college in
Weatherford, Texas, which exists under the laws of the State of
Texas, as the Department Chair of Kinesiology. Her employment
continued until July 2010. She received favorable reviews from
her students and peers, and positive comments from the
administration concerning her performance as an employee.
Despite her superior performance, plaintiff was demoted and later
terminated because, according to plaintiff, of discriminatory and
retaliatory animus. She claimed that she was treated differently
than her male and non-Hispanic colleagues in the terms and
conditions for employment, and that she was replaced as
kinesiology chair by a male, although she had better credentials
and greater experience than he had. Plaintiff alleged that she
was harassed by other members of the staff at the college based
on her gender and because she had asserted previous claims of
discrimination.

She filed a charge of discrimination in December 2008,
complaining of sex discrimination and retaliation related to a
hostile work environment, claims of discrimination, and her
demotion. The issues between plaintiff and defendant as they

2

existed in October 2009 were resolved by a Settlement Agreement
and General Release signed October 26, 2009.  However, plaintiff
alleged, soon after the agreement was made, the retaliatory and
discriminatory conduct of personnel at the college began again.
She described a series of events that occurred between January
2010 and June 2010 that she maintained constituted inappropriate
conduct directed to her by employees of defendant.  Plaintiff
alleged that the conduct of a particular employee of defendant
toward her and other female employees created a hostile work
environment and demonstrated a pretext for his discriminatory and
retaliatory intent to unlawfully terminate plaintiff's
employment.  She alleged that defendant's actions to endorse that
behavior and to rely on the false reports of that employee made
defendant vicariously liable for the discriminatory and
retaliatory action of that employee.

According to plaintiff, those series of events culminated on
June 10, 2010, when the Board of Trustees of defendant upheld the
decision of defendant's president not to renew plaintiff's
contract and to terminate her employment.  Plaintiff alleged
that, upon information and belief, defendant discriminated
against her because of her sex, her race (Hispanic), and because
she filed complaints of discrimination and retaliation.  She

alleged that the nonrenewal of her contract was retaliatory for her prior complaints of discrimination and retaliation.

A charge of discrimination was jointly filed by plaintiff with the Equal Employment Opportunity Commission ("EEOC") and the Texas Work Force Commission-Civil Rights Division within 180 days of the nonrenewal of her employment agreement. She received a notice of right to sue from the EEOC on or about June 1, 2011, less than ninety days before she filed this action. Plaintiff sought relief at all levels of defendant's grievance process; and, her grievance was denied at all levels. She made a demand for full due process or name-clearing hearing, including any and all hearing and procedural rights which she might have by virtue of defendant's policies, her conduct, and state or federal law. Defendant denied her request for a full due-process hearing or non-clearing hearing; and, the final grievance hearing before defendant's Board of Trustees did not comply with procedural due process.

Plaintiff alleged nine separate causes of action in what she designated in her complaint as Counts One through Nine, respectively, which may be summarized as follows:

Count One charged defendant under 42 U.S.C. § 1983 with race/national origin discrimination. Plaintiff alleged that defendant, acting through its agents, deprived her of her rights

4

under the First and Fourteenth Amendments of the United States Constitution and of her rights to enforce her contract of employment to the full benefit of all laws and proceedings and for the security of persons and property as is enjoyed by white citizens.  She alleged that the conduct she described in the complaint constituted unlawful discrimination on the basis of race/national origin in violation of 42 U.S.C. §§ 1981 and 1983, specifically claiming that plaintiff terminated her employment, and disparately treated her in the terms and conditions of her employment based on her race/national origin.

Count Two charged defendant with sex discrimination under Title VII, 42 U.S.C. § 2000e-2(a).  Plaintiff alleged that her sex was a motivating factor in defendant's decision to terminate her and/or not renew her contract, and that she was disparately treated based on her gender in the terms and conditions of her employment by defendant.

Count Three charged defendant with retaliation under Title VII, 42 U.S.C. § 2000e-3(a).  She alleged that she previously had opposed an employment practice that she maintained was unlawful under Title VII, and had participated in a proceeding protected by Title VII.  According to her, those protected activities were a motivating factor in defendant's decision to terminate her and/or not renew her contract; and, she alleged that she was

disparately treated in the terms and conditions of her employment because she engaged in such protected activity.

Count Four charged defendant with sex discrimination under Section 21.051 of the Texas Labor Code. It appears to be the state-law version of the same sex-discrimination claim alleged by plaintiff under federal law in Count Two.

Count Five charged defendant with retaliation under Section 21.055 of the Texas Labor Code. It appears to be the state-law version of the retaliation claim alleged on the basis of federal law in Count Three.

Count Six charged defendant with violation of Title IX, 20 U.S.C. § 1681(a). The court interprets comments made by plaintiff in her response to the motion for summary judgment to be a concession that she cannot successfully defend the motion as to her Count Six, and that she is withdrawing her Count Six cause of action. Therefore, the court is not devoting further attention to that cause of action.

Count Seven charged defendant with violation of her right to free speech guaranteed by the Texas Constitution and the United States Constitution, and that plaintiff's protected exercise of speech was a motivating factor in adverse employment actions taken against her by defendant. She also alleged that plaintiff's complaints regarding defendant's conduct amounted to

a petition protected by the Petition Clause of the First
Amendment, and that adverse employment decisions made against her
were retaliation for her protected activity.  Plaintiff included
in her Count Seven cause of action complaints that she was denied
procedural and substantive due process in violation of state and
federal law, including a provision of the Texas Constitution and
the Fourteen Amendment of the United States Constitution.  The
Count Seven cause of action is being brought under 42 U.S.C.
§§ 1983 and 1988.

Count Eight charged defendant with breach of en employment
contract between plaintiff and defendant.  Apparently she alleges
that the breach was in the form of the failure of defendant "to
tender Plaintiff 90-days notice of the non-renewal of her
contract."

Count Nine charged defendant with breaching the Settlement
Agreement and General Release plaintiff and defendant signed in
October 2009.  Specifically, plaintiff alleged that use of
certain complaints and disciplinary actions in the hearing
against plaintiff was in violation of the agreement and that she
believes that defendant has not followed an agreed procedure
regarding references and inquiries regarding her employment by
defendant.

7

Plaintiff prayed for back pay, including lost wages and other employment benefits; reinstatement to the position from which she was discharged (or, alternatively, front pay and benefits); actual damages; compensatory damages in the maximum amount allowed by law; attorneys' fees, expert fees, costs of suit, and pre-judgment and post-judgment interest.

II.

### Grounds of the Motion

A.  **Affirmative Defenses of Release and Statute of Limitations**

Defendant starts its supporting arguments with contentions that certain of plaintiff's claims are barred by the affirmative defenses of release and statute of limitations.  It summarized its arguments on those subjects as follows:

> In summary, any of Plaintiff's claims that accrued prior to October 26, 2009, are barred by the doctrine of release.  Moreover, any of Plaintiff's claims asserted under Title VII that were previously exhausted in her December 3, 2008, charge of discrimination, as well as any claims under Title VII that accrued prior to November 13, 2009 are barred by the applicable statute of limitations, as are any of Plaintiff's previously exhausted TCHRA claims and any TCHRA claims that accrued prior to March 13, 2010.  Finally, any claims asserted by Plaintiff under Section 1983 or

Title IX that accrued before August 3, 2009, are time barred.[1]

Br. in Supp. of Mot. at 7.

According to defendant, all claims asserted by plaintiff arising on or before October 26, 2009, are barred by the release plaintiff signed on October 26, 2009.  Defendant also asserted that all Title VII claims made by plaintiff based on events that occurred more than 300 days before she filed the EEOC charge on September 10, 2010, leading to this action are time-barred, and that all claims made under the TCHRA based on events that occurred more than 180 days prior to the filing by plaintiff of her complaint with the TCHRA are time-barred.  Defendant contended that plaintiff is barred from pursuing any action based on conduct about which she complained in her December 3, 2008 EEOC complaint because of her failure to bring an action as to that conduct within ninety days from her receipt from EEOC of the dismissal of her complaint and of EEOC's notice of right to sue.

As to plaintiff's claims under 42 U.S.C. § 1983, defendant asserted that a two-year statute of limitations applies to those claims, and that it prevented plaintiff from pursuing any claims based on conduct that occurred prior to August 3, 2009.

---

[1]"TCHRA" is an abbreviated reference for the Texas Commission on Human Rights Act, section 21.001 of the Texas Labor Code.

B.   <u>Reasons for Summary Dismissal of Plaintiff's</u>
     <u>Race/National Origin Discrimination Claim</u>

Defendant urged multiple reasons, in addition tho those
discussed above, why plaintiff's race/national origin
discrimination claim brought under 42 U.S.C. § 1983 should
summarily be dismissed, starting with arguments that plaintiff
cannot establish a prima facie case of race/national origin
discrimination because: first, she is not a member of a protected
class; second, she was not replaced by someone outside of the
class of which plaintiff claims to be a member, nor was she
treated differently with respect to her nonrenewal, nor was she
treated less favorably than others similarly situated with
respect to her pay; and, third, she has not established any
adverse employment action or disparate treatment with respect to
her benefits.  Defendant added that it had numerous legitimate,
nondiscriminatory reasons to nonrenew plaintiff's contract.
Finally, defendant argued that plaintiff cannot establish
municipal liability against defendant under § 1983, which
requires proof of three elements--a policymaker; an official
policy; and a violation of constitutional rights the moving force
of which was a policy or custom of defendant--none of which is
supported by evidence in this case.

10

C.   Reasons for Summary Dismissal of Plaintiff's Claims of
     Sex Discrimination

Defendant starts his argument on this subject by maintaining

that plaintiff cannot establish a prima facie case of sex

discrimination because she cannot adduce probative evidence that

she was replaced by someone outside her protected class or

treated differently with respect to her nonrenewal or with

respect to her pay, and she cannot establish any adverse

employment action or disparate treatment with respect to her

benefits.  And, again, defendant urges that, if one were to

assume hypothetically that plaintiff could make out a prima facie

case, defendant had numerous legitimate, nondiscriminatory

reasons to nonrenew her contract.

D.   Reasons for Summary Dismissal of Plaintiff's
     Retaliation Claims

Defendant started by arguing that plaintiff cannot establish

a prima facie case of retaliation because, first, she did not

engage in protected activities after October 26, 2009; second,

she cannot establish any adverse employment action with respect

to the terms and conditions of her employment; and, third, she

cannot establish a causal link between any alleged protected

activity known to defendant and any adverse employment actions.

Defendant added, again, that, even if the ability to prove a

prima facie case of retaliation is assumed, arguendo, defendant

11

had numerous, legitimate, nondiscriminatory reasons not to renew
her contract.

E.   Reasons for Summary Dismissal of Plaintiff's Free
     Speech and Petition Claims

     Defendant noted that plaintiff's free speech and petition
claims are retaliation claims in another form--claims that
plaintiff was demoted and nonrenewed in retaliation for asserting
her rights to free speech and petition.  Defendant argued that
the speech to which plaintiff refers in her complaint did not
address a matter of public concern but, instead, the speech
concerned the conditions of her employment, a private matter.
Defendant added that plaintiff cannot establish municipal
liability under § 1983 because she cannot establish a
policymaker, an official policy, or a violation of constitutional
rights the moving force of which is an official policy or custom.

F.   Reasons for Summary Dismissal of Plaintiff's Procedural
     and Substantive Due-Process Claims

     Defendant contended in its motion that plaintiff had no
liberty or property interest in her employment or expectancy of
renewal in her employment with defendant, bearing in mind that
the employment contract stated that it did not grant or create
any property rights in any position or assignment, did not grant
or create any contractual right, expectancy of continued
employment, or claim of entitlement to employment beyond the term

12

of the contract, and did not provide for tenure.   Defendant noted

that plaintiff's contract was nonrenewed, not terminated during

the term of the contract, that plaintiff received all pay of

benefits provided for under the contract, and that the contract

simply expired by its own terms.   Alternatively, defendant

contended that if plaintiff had established a liberty or property

interest that entitled her to procedural due process, she cannot

adduce any evidence that she was not given all process due to

her--she was given notice of, and opportunity to be heard at, the

hearing at which the nonrenewal of her contract was considered.

Defendant argued that plaintiff's claim of violation of

substantive due process is without merit considering the rule

that reliance on the generalized notion of substantive due

process is inappropriate when, as in this case, there are other

constitutional or statutory provisions that provide the remedial

framework for the alleged deprivation.   Defendant contended that,

in any event, she cannot prevail on her substantive due process

claim as there is no evidence that she was denied any right in an

arbitrary or capricious manner, nor can plaintiff establish

municipal liability under § 1983--she cannot establish a

policymaker, an official policy, or a violation of constitutional

rights resulting from such a policy or custom.

G.   Reasons for Summary Dismissal of Plaintiff's Breach of
     Contract Claim

     The reasons given by defendant for summary dismissal of

plaintiff's breach of contract claim are (1) the contract was not

breached, as plaintiff claimed, inasmuch as she received the

requisite ninety days' notice of nonrenewal of the contract, and

(2) in any event, plaintiff would be unable to show that she was

damaged by failure to receive timely notice, if there had been

such a failure.

H.   Reasons for Summary Dismissal of Plaintiff's Claim for
     Breach of Settlement Agreement

     Defendant contended that plaintiff's alleged cause of action

based on a claimed breach of the settlement agreement should be

summarily dismissed because there is no evidence that defendant

did not comply with its obligations under the settlement

agreement.

                              III.

                            Analysis

A.   Pertinent Summary Judgment Principles

     This action is particularly suited for summary disposition

under the rules and standards expressed by the Supreme Court in

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475

U.S. 574 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986);

and, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  There

                               14

is no genuine dispute as to any material fact, and defendant is entitled on the existing record to judgment as a matter of law.

The party moving for a summary judgment may discharge its burden of showing that there is no genuine issue of material fact by pointing out the absence of evidence to support one or more of the essential elements of the non-moving party's claim "since the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323-25. Once the moving party has carried its burden under Rule 56, the nonmoving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 586. The party opposing the motion may not rest on mere allegations or pleaded denials, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). Conclusory allegations are insufficient to defeat a motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248.

The only evidence in the summary judgment record that is
properly before the court in determining the outcome is evidence
specifically brought to the attention of the court by the
proponent of the evidence.  Malacara v. Garber, 353 F.3d 393, 405
(5th Cir. 2003); Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455,
458 (5th Cir. 1998) ("The party opposing summary judgment is
required to identify specific evidence in the record and to
articulate the precise manner in which that evidence supports his
or her claim.  Rule 56 does not impose upon the district court a
duty to sift through the record in search of evidence to support
a party's opposition to summary judgment." (citation and internal
quotation marks omitted)).  Only competent summary judgment
evidence can serve to defeat a Rule 56 motion.  Clark v.
America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997)
("Unsupported allegations or deposition testimony setting forth
ultimate or conclusory facts and conclusions of law are
insufficient to defeat a motion for summary judgment.").  See
also United States v. Lawrence, 276 F.3d 193, 197 (5th Cir. 2001)
(holding that an affidavit containing a recitation of fact that
could not be proved at trial was but a self-serving allegation,
and was not of the type of significant probative evidence

required to defeat summary judgment).   Rule 56 itself requires
that:

> (4)   *Affidavits or Declarations*.   An affidavit or
> declaration used to support or oppose a motion must be
> made on personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant or
> declarant is competent to testify on the matters
> stated.

Fed. R. Civ. P. 56(c)(4).

*   *   *   *

The parties to this action have devoted significant

attention to the development of a summary judgment record; and,

plaintiff has had ample opportunity to come forward with

probative evidence that would support the elements of one or more

of her causes of action, but has failed to do so.   Were this case

not to be resolved summarily under the authority of Rule 56,

tremendous litigant and judicial resources would unnecessarily be

devoted to its resolution.   Thus, the wholesome utility of the

summary judgment rule is realized by a summary disposition of

this action.   Apropos is the following language used by the Fifth

Circuit in <u>Little v. Liquid Air Corp.</u>:

> Nor should a defendant be required to bear the
> unnecessary costs of delay and trial to defend against
> a claim that has no merit. Neither party should be
> required to bear the costs of trying all of the issues
> in a case when some can and should be resolved on
> summary judgment. Nor is it fair to require other
> cases to languish on the district courts' trial dockets
> because of cases that present no genuine questions of

17

material fact.  As Judge Rubin stated for this court in
<u>Fontenot</u>, 780 F.2d at 1195, "[T]rial would be a
bootless exercise, fated for an inevitable result but
at continued expense for the parties, the preemption of
a trial date that might have been used for other
litigants waiting impatiently in the judicial queue,
and a burden on the court and the taxpayers."

37 F.3d 1069, 1076 (5th Cir. 1994) (en banc).

With the foregoing summary judgment principles in mind, the

court now considers each of plaintiff's pleaded causes of action.

B.   <u>The Breach of Employment Contract Cause of Action
     (Count Eight)</u>

The employment contract between plaintiff and defendant said

that:

Notification of non-renewal of this Contract will be
made on or before the notification date provided for in
board policy DMAB (Local) in effect at the time this
Contract was awarded preceding the end of the
employment term fixed in the Contract.

Mot., App. at 285.  The applicable "board policy DMAB (Local)"

provided that plaintiff, a third-year employee, was entitled to

notice of the decision of defendant's President not to recommend

the renewal of her contract "90 days prior to the end of the

contract."  <u>Id.</u> at 384.  She received notice on May 17, 2010,

that the President was not recommending the renewal of her

contract for the 2010-2011 school year.  <u>Id.</u> at 356-57.  Ninety

days before the end of the contract was approximately June 3,

2010.[2]  Thus, the summary judgment record establishes without dispute that plaintiff received notice of the President's nonrenewal recommendation more than ninety days prior to the end of the contract.  Moreover, even if timely notice had not been given, plaintiff has not pointed to any evidence that would support a conclusion that she has a breach of contract cause of action inasmuch as there is no evidence that the timing of the notification to plaintiff of the President's decision not to recommend renewal of her contract caused her any harm or damage.

Therefore, the court has concluded that summary judgment is should be granted as to plaintiff's Count Eight breach of employment contract cause of action.

C.   The Breach of Settlement Agreement Cause of Action
     (Count Nine)

On October 26, 2009, the parties entered into a document titled "Settlement Agreement and General Release" ("Settlement Agreement").  Mot., App. at 287-99.  The section of that document pertinent to plaintiff's Count Nine cause of action reads in pertinent part as follows:

> 1.   Consideration and Release.  In consideration
> for the release and waiver of all Complaints, claims,
> grievances and causes of action by Austen, as well as

---

[2]The contract of employment unambiguously stated that plaintiff's employment with defendant ended August 31, 2010.  Mot., App. at 285.

the other promises, agreements and consideration
provided herein, Respondent agrees . . . .:

. . . .

(b). to remove the performance notice/disciplinary
warnings attached to this Agreement as Exhibit "A" from
Austen's official Weatherford personnel file and
physically relocate such documents to a separate file,
to be maintained by the President of Weatherford in a
locked drawer/cabinet for a period of no longer than
two years after the Effective Date of this Agreement
and thereafter such file shall be destroyed.

. . . .

(e). to the extent Austen desires to obtain a
reference from Weatherford, Austen shall direct any
potential future employers to contact only the
Weatherford Director of Human Resources, currently
Ralinda Stone, who shall only provide such entity with
Austen's dates of employment, as well as her position
and salary at the time of the request.

Id. at 287-88.

First, plaintiff alleges that defendant's use of certain

complaints and disciplinary actions at a hearing against

plaintiff was in violation of the document. Am. Compl. at 22,

¶ 119. The only evidence that any of the complaints or

disciplinary actions that predated the Settlement Agreement were

considered in a hearing was the evidence that, among the things

considered by defendant's Board of Trustees at the June 10, 2010

hearing, were certain items descriptive of alleged misconduct on

plaintiff's part that predated the Settlement Agreement. Mot.,

App. at 82-283. Shortcomings with this first argument are: (1)

20

there is no summary judgment evidence that the pre-Settlement
Agreement material played a role in defendant's nonrenewal
decision, with the consequence that plaintiff has adduced no
evidence that she suffered any harm or damage as a result of any
use made of the material, and (2) nothing in the Settlement
Agreement prohibited use of pre-Settlement Agreement documents or
information in the making of future decisions concerning
plaintiff--the very fact that the Settlement Agreement
contemplated that defendant could maintain the documents for two
years indicates that the parties contemplated that defendant was
entitled to make further use of the documents.

     Second, plaintiff alleges that "[i]t is also believed that
Weatherford College has not followed an agreed procedure
regarding references and inquiries regarding Plaintiff's
employment at Weatherford College."  Am. Compl. at 22, ¶ 120.
Plaintiff fails in her response to support this contention by any
record reference, nor does she in her response present any
argument in support of this second alleged breach of the
Settlement Agreement pleading.  Br. in Supp. of Resp. at 42-43.

     In her response to the motion for summary judgment,
plaintiff seems to be making the unpleaded claim that defendant
breached the confidentiality provision of the Settlement
Agreement by using pre-Settlement Agreement material at the

nonrenewal hearing. Id. at 42. The confidentiality paragraph of the Settlement Agreement reads, in pertinent part, as follows:

>    4.   Confidentiality. Austen agrees to keep the terms and conditions of this Agreement strictly confidential and shall not disclose them to any other person or entity, with the limited exception that Austen may disclose the terms to her spouse, attorney, and/or financial advisor, provided such individual(s) also agree to keep such information confidential. Weatherford also agrees to keep the terms and conditions of this Agreement strictly confidential and shall not disclose them to any other person or entity, with the limited exception that Weatherford may disclose the terms to its attorney, accountant and/or advisor, provided such individual(s) also agree to keep such information confidential.

Mot., App. at 289. If plaintiff is now claiming that defendant breached its confidentiality undertaking, her claim is without support in the summary judgment record. The only use made of the material was that made at the June 10, 2010 hearing to which plaintiff and defendant were the only parties and only persons having access to the information that was available at the hearing. There is no reasonable interpretation of the confidentiality provision that would lead to the conclusion that it is breached if the only disclosure of information is by one party to the agreement to the other party to the agreement.

The court has concluded that summary judgment should be granted as to plaintiff's Count Nine breach of Settlement

Agreement cause of action.  She has adduced no summary judgment evidence that there was a breach, nor, if there had been a breach, has she adduced any summary judgment evidence that she suffered any damage or harm by reason of inclusion of pre-Settlement Agreement material in the items considered by defendant's Board of Trustees at the June 10, 2010 hearing.

D.   The Race/National Origin Discrimination (Count One),
     Sex Discrimination (Counts Two and Four), and
     Retaliation (Counts Three and Five) Causes of Action

     The court questions whether plaintiff has pointed to probative summary judgment evidence that would raise a prima facie case as to any of her causes of action based on alleged race/national origin and sex discrimination and retaliation; and, the summary judgment record indicates that significant parts, if not all, of those causes of action are barred by limitations. However, the court does not need to devote further time and attention to a discussion of those reasons why plaintiff's discrimination and retaliation causes of action are without merit.  Even if a prima facie case had been made by the summary judgment evidence as to one or more of those causes of action, and even if one or more of the causes of action were not barred by limitations, the summary judgment record establishes that defendant had legitimate, nondiscriminatory reasons for employment actions taken by defendant in reference to plaintiff;

23

and, plaintiff has not called the court's attention to any
probative summary judgment evidence that would raise an issue
that any of those reasons was a pretext for discrimination.

The May 26, 2010 letter from defendant's President to
plaintiff informing her of his reasons for recommending to the
Board of Trustees nonrenewal of plaintiff's employment contract
with defendant does not hint at any discriminatory motive,
intent, or design.  Mot., App. at 371-72.  The decision as to
whether there would be a nonrenewal rested with defendant's Board
of Trustees.  Id. at 13.  The transcript of the hearing conducted
by the Board of Trustees on June 10, 2010, relative to nonrenewal
provides evidence that plaintiff's conduct totally unrelated to
her race/national origin, sex, or any discrimination complaint
provided the sole reasons for nonrenewal of the employment
contract.  Mot., App. at 393-494.  The explanations given by
defendant's President for his recommendation that plaintiff's
employment contract not be renewed did not include anything that
could be viewed to be an improper motive.  Id. at 404-22.  The
concern he expressed was with plaintiff's rather bizarre conduct
that had no relationship to her race/national origin, sex, or any
complaint of discrimination.  Id.  The decision of the Board of
Trustees to accept the President's recommendation of nonrenewal
contained no hint of an improper motive.  Id. at 494.  Plaintiff

24

has pointed to no summary judgment evidence that would suggest
that defendant's President or Board of Trustees was motivated by
anything other than nondiscriminatory reasons in making their
employment decisions relative to plaintiff.

The court has concluded that summary judgment should be
granted as to plaintiff's Counts One, Two, Three, Four, and Five
discrimination and retaliation claims.

E.   The Alleged Violation of Plaintiff's Rights to Free
     Speech and Petition (Count Seven)

Plaintiff contends in Count Seven that she was demoted and
nonrenewed in retaliation for asserting her rights to free speech
and petition.  Am. Compl. at 19-20, ¶¶ 104-05.  For plaintiff to
establish a retaliation claim under the First Amendment, she
would be required to adduce evidence that:  (1) plaintiff
suffered an adverse employment action; (2) plaintiff's speech
involved a matter of public concern; (3) plaintiff's interest in
commenting on matters of public concern outweigh defendant's
interest in promoting efficiency; and (4) plaintiff's speech
motivated defendant's action.  Teague v. City of Flower Mound,
179 F.3d 377, 380 (5th Cir. 1999).  See also Borough of Duryea v.
Guarnieri, 131 S. Ct. 2488 (2011).

A basic shortcoming of plaintiff's free speech and petition
claims is that there is no summary judgment evidence that her

speech involved a matter of public concern, which is a question
of law for the court.  Id.  In making the "public concern"
determination, the speech in question is to be evaluated with
respect to its content, form, and context.  Connick v. Myers, 461
U.S. 138, 147 (1983).  In an employment situation, there is a
determinative difference between an employee speaking on matters
of public concern and speech on the subject of the employee's
personnel issues.  The Supreme Court said in Connick:

> We hold only that when a public employee speaks not as
> a citizen upon matters of public concern, but instead
> as an employee upon matters only of personal interest,
> absent the most unusual circumstances, a federal court
> is not the appropriate forum in which to review the
> wisdom of a personnel decision taken by a public agency
> allegedly in reaction to the employee's behavior.

Id.  The "speech" on which plaintiff hangs her First Amendment
hat related only to the terms and conditions of her employment--
thus, the speech is not upon a matter of public concern.  See
Foley v. Univ. of Houston Sys., 355 F.3d 333, 341 (5th Cir.
2003).

Although plaintiff contends that she spoke on matters of
public concern, she acknowledged that all of her matters of
"public concern" were related to complaints about her employment.
Mot., App. at 578-79.  Because all the speech at issue concerns
the conditions of plaintiff's employment, as a matter of law

plaintiff cannot establish a violation of her right to free speech or petition. See Teague, 179 F.3d at 381. The court, therefore, has concluded that summary judgment should be granted as to plaintiff's Count Seven causes of action based on alleged denial of her rights to free speech and petition.

F.   The Alleged Violations of Plaintiff's Procedural and Substantive Due Process Rights (Count Seven)

The court is assuming that plaintiff is asserting her Count Seven denial of due process claims through the vehicle of 42 U.S.C. § 1983. See World Wide St. Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 752 (5th Cir. 2009). In order to state such a claim, plaintiff must establish (1) a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. See Rendon v. Brownsville Indep. Sch. Dict., No. 10-CV-198, 2011 U.S. Dist. LEXIS 65627, at *12 (S.D. Tex. June 21, 2011) (quoting Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994)). Stated another way, "[t]o bring an action within the purview of section 1983, [plaintiff] must first identify a protected life, liberty, or property interest, and then prove that government action resulted in a deprivation of that interest." San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 700 (5th Cir. 1971).

In order for plaintiff to succeed on a due process claim, whether procedural or substantive, she must first establish a legitimate claim of entitlement to a property interest, as determined by state law. See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Nunez v. Simms, 341 F.3d 385, 387-88 (5th Cir. 2003). Plaintiff alleged that she was deprived of "liberty and property interests recognized by and/or created by state law, including her objective expectancy of renewed employment as Department Chair of Kinesiology and/or Professor of Kinesiology and property interests guaranteed by the college's policies and her employment contract." Am. Compl. at 20, ¶ 106. Plaintiff is incorrect in thinking that she had such a liberty and property interest.

The existence of a property interest for purpose of due process, as determined by state law, must come from an independent source, such as statutes, contractual provisions, or mutually explicit understandings. Neither plaintiff's employment contract nor defendant's policies created any property interest in her employment. The contract specifically stated that it did not "grant or create any property right in any position or assignment," that it "does not grant or create any contractual right, expectancy of continued employment, or claim of entitlement to employment beyond the term of [the] Contract."

28

Mot., App. at 285.  Such a contract does not establish any
expectancy of employment after the term of the contract that
would give rise to a property interest.  See Ray v. Nash, 438 F.
App'x 332, 335 (5th Cir. 2011).  See also Tex. Educ. Code
§ 51.943(g).  Nor would a unilateral expectation of plaintiff in
continued employment serve as a basis to assert a property
interest.  Ray, 438 F. App'x at 335.  Because plaintiff's
contract was nonrenewed (not terminated during the term of the
contract), plaintiff received all pay and benefits under the
contract to which she was entitled.  Mot., App. at 10, ¶ 11.
Adding emphasis to the absence of a property interest in
continued employment is the policy of defendant stating that the
employment contract "creates a property interest in the position
only for the period of time stated in the contract."  Id. at 26.

     Equally without merit is plaintiff's assertion that she was
denied a liberty interest because her name was harmed by actions
taken by defendant to nonrenew her employment.  In order to
establish a liberty interest that is subject to due process,
plaintiff was required to prove that her "good name, reputation,
honor, or integrity is at stake because of what the government is
doing to [her]."  Roth, 408 U.S. at 573 (citing Wis. v.
Constantineau, 400 U.S. 433, 437 (1971)).  In such an event, due
process--notice and an opportunity to be heard--would be

essential.  Id.  However, nonrenewal standing alone does not invoke a liberty interest.  For example, in Roth, the Supreme Court concluded that the liberty interest of the plaintiff in that case was not implicated by reason of the nonrenewal of his contract, because the nonrenewal did not involve "any charge against him that might seriously damage his standing and associations in his community" as it was not based on a charge of dishonesty or immorality.  Id.  As the Supreme Court noted in Roth, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."  Id. at 575.

The stigma of discharge standing alone does not establish a deprivation of a liberty interest.  See Hughes v. City of Garland, 204 F.3d 223, 226 (5th Cir. 2000).  A liberty interest is implicated "only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities."  Id.  Plaintiff has pointed to no summary judgment evidence that would support a finding that her nonrenewal, which was based on numerous incidents of performance deficiencies from different witnesses, was based on false information or allegations.  Moreover, in order for plaintiff's

30

nonrenewal to create a false and defamatory impression, there must be evidence that false and defamatory information was published about plaintiff. See Loudermill, 470 U.S. at 547 n.13. An employee is not deprived of a "liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." Claborn v. Ohio, No. 2:11-CV-679, 2011 U.S. Dist. LEXIS 137629, at *23 (S.D. Ohio Nov. 30, 2011) (citing Siegert v. Gilley, 500 U.S. 226 (1991)). There is no summary judgment evidence that defendant published any statements about plaintiff. Her hearing was in a closed session. She cannot prevail on a mere subjective belief on her part that defendant created a "false and defamatory impression" about her that was publicized and prevented her from obtaining employment.

There are other reasons, which are outlined in defendant's brief, why plaintiff cannot prevail on her due process claims. However, the reasons discussed above are sufficient to support the court's conclusion that summary judgment should be granted as to plaintiff's Count Seven procedural and substantive due process claims.

G.   Conclusion

For the reasons given above, the court has concluded that defendant's motion for summary judgment should be granted in its

entirety.  Defendant supports the grounds of its motion by other arguments that the court has not discussed.  The court's silence on those other arguments is not to be taken as an implied comment as to their merits.  Rather, the court simply was not required to consider or discuss them in this memorandum opinion in order to explain the court's reasons for granting defendant's motion.

IV.

Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; and

The court further ORDERS that all claims and causes of action asserted by plaintiff against defendant be, and are hereby, dismissed.

SIGNED August ___8___, 2012.

JOHN McBRYDE
United States District Judge

32